UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ISAIAH, L.,                                                    Case No. 6:24-cv-02081-AR

                Plaintiff,                                  **OPINION AND ORDER**

     v.

COMMISSIONER SOCIAL SECURITY,

                Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security

benefits, Isaiah L. (last name omitted for privacy) challenges the Administrative Law Judge's

findings as to medical opinion evidence, his subjective symptom testimony, and the lay witness

testimony. As explained below, the Commissioner's decision is reversed and remanded for the

immediate payment of benefits.[1]

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties
have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and
28 U.S.C. § 636(c).

**BACKGROUND**

Plaintiff was born on June 21, 2002, and he was diagnosed with autism spectrum disorder in February 2008. (Tr. 191.) In September 2008, plaintiff began receiving Title XVI social security income (SSI) Disabled Child payments based on his autism spectrum disorder meeting Listing 112.05D criteria. (Tr. 191.) In June 2016, plaintiff's case was reviewed, and again his autism spectrum disorder met Listing 112.05D criteria. (Tr. 191.) Plaintiff turned 18 in June 2020, meaning his SSI eligibility was then subject to review. While awaiting review of his SSI claim, plaintiff filed an application for Title II Disability Insurance Benefits (DIB) in February 2021.[2] In November 2021, both plaintiff's DIB and SSI redetermination[3] claims were denied, and he was determined to be no longer disabled.

Plaintiff filed a request for Reconsideration of Disability Cessation, and in March 2023, he attended a video hearing before a State Agency Hearings Officer. (Tr. 188-90.) On March 31, 2023, the hearings officer issued a written decision denying both plaintiff's DIB and SSI claims. (Tr. 191-97.) Plaintiff then requested a hearing before an administrative law judge (ALJ), which took place on April 3, 2024. (Tr. 52-84.) On April 16 and 17, 2024, the ALJ issued separate,

---

[2]    Plaintiff's Title II application is not contained within the transcript but is referred to by the ALJ. (Tr. 13-26.)

[3]    Section 1614(a)(3)(H) of the Social Security Act provides that individuals who are eligible for Title XVI Disabled Child payments the month preceding the month of their 18th birthday must have their disability redetermined under the rules for disability used for adults.

unfavorable decisions regarding plaintiff's claims.[4] (Tr. 13-26, 34-47.) The Appeals Council

denied plaintiff's request for review. (Tr. 1.)

## ALJ'S DECISION

In denying plaintiff's applications for benefits, the ALJ followed the five-step sequential

evaluation process. [5] At step one, the ALJ determined that plaintiff had not engaged in substantial

gainful activity since June 21, 2020.[6] (Tr. 15.) At step two, the ALJ determined that plaintiff had

the following severe impairments:

- autism spectrum disorder,

- social anxiety disorder, and

- major depressive disorder.

(Tr. 16.) At step three, the ALJ determined that plaintiff's impairments, singly or in combination,

did not meet or medically equal the severity of any listed impairment. (Tr. 16.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §

404.1545, the ALJ determined that plaintiff has the ability to perform a full range of work at all

---

[4]     As both the ALJ's Title II and Title XVI decisions are nearly identical, the court refers
only to the Title II decision in citation.

[5]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20
C.F.R. § 404.1520(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any
step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-
47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

[6]     Plaintiff initially listed February 2008 as his alleged onset date on his DIB application.
The regulations, however, require a claimant to be at least 18 years of age to be eligible for Title
II benefits. The ALJ thus considered plaintiff's 18th birthday to be his alleged onset date for his
Title II claim. (Tr. 15.)

exertional levels, with the following nonexertional limitations:  simple, routine, and repetitive tasks in an environment free of fast-paced production requirements and requiring only simple work related decisions; few workplace changes; no interaction with the public; and occasional, brief and superficial interaction with coworkers and supervisors. (Tr. 18.)

At step four, the ALJ concluded plaintiff had no past relevant work. (Tr. 25.) Next, considering plaintiff's age, education, and RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as router, floor waxer, and cleaner. (Tr. 26.) The ALJ thus concluded that plaintiff was not disabled. (Tr. 26.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.   *Medical Opinion Evidence*

Plaintiff challenges the ALJ's evaluation of the medical opinion evidence, arguing that the ALJ failed to incorporate credible functional limitations identified in the medical opinions of

examining psychologist, David Archambault, Ph.D.; examining psychologist, Chandra Perez, Psy.D.; examining psychologist, Laura O'Connor, Psy.D.; and treating pediatrician, Lisa Palmieri, M.D. (Pl.'s Br. at 2.) The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

A district court reviews the ALJ's evaluation of medical opinions for substantial evidence. *See Woods*, 32 F.4th at 787 ("an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). Moreover, an ALJ may not "reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Id.* at 792. *See also Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### 1.     Dr. Archambault

In November 2021, Dr. Archambault conducted a consultative psychological evaluation in connection with plaintiff's disability claim. (Tr. 387-92.) The ALJ found Dr. Archambault's

Page 5 – OPINION AND ORDER
*Isaiah L. v. SSA*, 6:23-cv-02801-AR

opinion persuasive, noting his findings were "generally consistent with the objective and other evidence of record" and were "supported by his own clinical observations with explanations of the bases for his assessments." Even so, the ALJ found that Dr. Archambault's assessment was "set out in broad terms, without identifying the [plaintiff's] specific levels of difficulty in each area." (Tr. 24.) As to consistency, the ALJ noted that Dr. Archambault's opinion that plaintiff "would have difficulty performing detailed and complex tasks" and would "likely need instructions repeated and given with simple wording with as few steps as possible" was consistent with his opinion that plaintiff is capable of simple repetitive tasks. (Tr. 22-23.) Based on Dr. Archambault's findings, the ALJ limited plaintiff to performing only simple, routine, and repetitive tasks in the RFC decision. (Tr. 18)

The ALJ's failure to incorporate any limitation as to instructions amounts to reversible error. Although the Commissioner argues that the ALJ merely translated broad limitations identified by Dr. Archambault into "concrete restrictions," a limitation to simple tasks does not sufficiently account for plaintiff's need to have directions repeated, with simple wording and in as few steps as possible. (Def.'s Br. at 4.)

This court is guided by the Ninth Circuit's clarification in *Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023), that "simple tasks" and "short, simple instructions" are separate limitations, each consistent with different levels of reasoning in the DOT.[7]  In *Leach*, the court explained that a limitation to simple, one-or-two step instructions was more consistent with jobs at reasoning level one, while a limitation to "simple routine tasks" was more consistent with reasoning level

---

[7]      *See* DOT, App. C, § III, 1991 WL 688702.

two. *Id.* at 1256-57. As that court explained, the "key distinction between those two levels is that

level-one jobs require instructions involving at most two steps, whereas level-two jobs may

require 'detailed'—that is, potentially longer—instructions." *Id.* at 1256 (quoting *Rounds v.

Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015)).

Here, Dr. Archambault's opinion supported a limitation to short, simple instructions.

More telling is that the record consistently demonstrates that plaintiff required short, simple, one-

to-two step instructions, and that he often needed those instructions repeated. (*See, e.g.*, Tr. 16,

24, 292, 293, 390, 441.) The ALJ acknowledged that plaintiff received those kinds of

accommodations at school and at work but then failed to incorporate such a limitation in the RFC

determination. (Tr. 16, 24.) Consequently, the VE proposed only jobs that required reasoning

level two, which can involve detailed but uninvolved written or oral instructions. (Tr. 81-82.)

Such a result is not consistent with plaintiff's capabilities. The Commissioner attempts to salvage

the ALJ's RFC determination by proposing that, although the RFC does not include any

limitation as to instructions, the RFC "do[es] not *prevent* any repetition or simple wording of

instructions." (Def.'s Br. at 4 (emphasis in original.)) This argument indicates a flawed

understanding of RFC requirements, which must include all credible symptom allegations and

limitations that have not been properly rejected. 20 C.F.R. §§ 404.1545(a), 416.945(a). Plaintiff's

need to have instructions communicated in a short, simple manner is a credited allegation that is

supported by the record.

### 2.    Dr. Perez

Dr. Perez conducted a comprehensive psychological evaluation of plaintiff in December

2022. (Tr. 415-32.) The ALJ first states that he will not "provide articulation about evidence

[that] is inherently neither valuable nor persuasive, including statements about whether the claimant is disabled or can maintain employment." (Tr. 21.) The ALJ then rejected the opinion of Dr. Perez in part because she did not provide "specific functional abilities or limitations" and instead "appear[ed] to have concluded claimant is unable to sustain full-time work based on his reported difficulties while working full-time at McDonald's and his mother's reports." (Tr. 21.)

Notably, the ALJ does not discuss the supportability or consistency of Dr. Perez's opinion, a fact which the Commissioner argues is appropriate because Dr. Perez's does not meet the regulatory requirements of a medical opinion. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions[.]") But even if Dr. Perez failed to provide specific functional abilities or limitations, she provided *objective* medical evidence that is probative of plaintiff's abilities that the ALJ should have considered. 20 C.F.R. §§ 404.1513(a)(1), 404.1502(g) (providing the agency will consider objective medical evidence, including signs such as medically demonstrable phenomena indicating specific psychological abnormalities); *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (stating that "an ALJ may not ignore significant probative evidence that bears on the disability analysis).

For example, Dr. Perez administered a series of psychological tests, including WAIS-IV standard intelligence tests. Based on these test, plaintiff's full-scale IQ was scored at 65, or extremely low. His verbal comprehension score was 72, or borderline. His processing speed was 59, or extremely low. (Tr. 420.) Based on these assessments, Dr. Perez diagnosed plaintiff with autism spectrum disorder level two, requiring "substantial support." (Tr. 426-27.) The ALJ

disregarded this objective evidence, focusing instead on Dr. Perez's failure to "consider[] the claimant's functional capacity to perform work in a setting other than food service." (Tr. 21.) Additionally, the ALJ stated that evidence from plaintiff's school reports demonstrated "tremendous" and "ongoing progress despite his difficulties." (Tr. 21.)

The ALJ's conclusion that Dr. Perez failed to consider plaintiff's ability to work in a non-food service environment is speculative and not supported by substantial evidence. (Tr. 21-22.) Dr. Perez does not state that she considered only plaintiff's past work in food service when opining as to his need for support and accommodation in possible future work endeavors. As discussed, her opinion is based not only on statements from plaintiff, but also on objective testing of plaintiff's cognitive and behavioral functioning. Dr. Perez relied on the testing results as well as plaintiff's history to form her conclusions as to plaintiff's ability to sustain full-time work. (Tr. 428-29.)

 Finally, the ALJ discounted Dr. Perez's opinion because she "did not review [plaintiff's] school records" citing "tremendous progress," including graduating with a "regular diploma, and having excelled in his coursework for a certificate in business from a technical college" (Tr. 21, citing Tr. 336, 340) and teacher comments that plaintiff is friendly, kind, and diligent (Tr. 21). Contrary to the ALJ's assertion, plaintiff's school records were reviewed as part of the interview with Dr. Perez; her notes under the "education history" heading indicate she was aware of the successes outlined by the ALJ. (Tr. 417-18.) Dr. Perez's notes also document many accommodations that plaintiff received at school, a point that the ALJ failed to mention when evaluating Dr. Perez's opinion. Plaintiff's successes were due, in large part, to the carefully crafted IEP accommodations, including 35 hours a week of special instruction, breaks to walk

Page 9 – OPINION AND ORDER
*Isaiah L. v. SSA*, 6:23-cv-02801-AR

around and decompress, a calculation device, repeated directions, extended response time, visual representation graphic organizer, and music during independent study—all administered on an as-needed basis. (Tr. 394, 398.) And school notes stated plaintiff will "still require[] transition services to help him prepare for life after high school." (Tr. 401.) In short, the ALJ's analysis of Dr. Perez's opinion is not supported by substantial evidence.

### 3. Dr. O'Connor

Dr. O'Connor conducted a neuropsychological evaluation of plaintiff in January 2023. (Tr. 434-46.) Based on a series of objective tests and clinical interviews, Dr. O'Connor diagnosed plaintiff with autism spectrum disorder with accompanying intellectual impairment, moderate. (Tr. 441.) The ALJ rejected Dr. O'Connor's opinion for reasons like those given for rejecting Dr. Perez's opinion; that is, Dr. Oconner did not provide any specific functional abilities or limitations and failed to consider plaintiff's "functional capacity to perform work in a setting other than food service." (Tr. 22.) As with Dr. Perez, the ALJ failed to properly consider the objective evidence proffered by Dr. O'Connor.

Dr. O'Connor administered objective tests to plaintiff, including the WAIS-IV and WCST-64. Based on those testing results, Dr. O'Connor concluded that plaintiff's overall cognitive ability was in the low range, and his executive functioning scores varied between very low and low-average. (Tr. 437.) His visual processing speed was very low, and his "learning to learn" scores "suggest that he did not become increasingly efficient at shifting from one sorting principle to the next as the test progressed." (Tr. 437.) The ALJ dismissed Dr. O'Connor's objective medical evidence, based on an assumption that her opinion only considered plaintiff's capacity to work in food service. The ALJ does not explain how he reached this conclusion, or

Page 10 – OPINION AND ORDER
*Isaiah L. v. SSA*, 6:23-cv-02801-AR

how this conclusion invalidated the objective evidence provided within Dr. O'Connor's opinion. Therefore, as with Dr. Perez's opinion, the ALJ's conclusions here are not supported by substantial evidence.

**4.    Dr. Palmieri**

The ALJ discounted Dr. Palmieri's medical opinion, in part because she failed to identify what specific supports plaintiff requires and "does not appear to have considered [his] demonstrated progress and achievements." (Tr. 22-23.) The ALJ stated that Dr. Palmieri "identified no clinical observations or basis of her knowledge or familiarity with [plaintiff's] functioning since June 2020." (Tr. 23.) The ALJ's conclusion as to the supportability of Dr. Palmieri's opinion is reasonable, as Dr. Palmieri provided no data or treatment notes to support her opinion.

The ALJ then partially credited Dr. Palmieri's opinion that plaintiff's full-scale IQ was inconsistent with his "demonstrated greater abilities." (Tr. 23, citing Tr. 384.) The ALJ cited plaintiff's transitioning to regular classes his last semester of high school, earing a certificate in business administration, working, and going to school to support his position. (Tr. 23.) Here, again, the ALJ failed to recognize that plaintiff's "demonstrated greater abilities" are consistently made possible through accommodations, such as extra time to complete work and tests, as-needed five-minute breaks, extra time to understand directions, access to assistive technology, and use of fidget spinners to help him stay focused. Although the ALJ correctly stated that Dr. Palmieri failed to identify the supports plaintiff requires, that does not negate the fact that her opinion that plaintiff continues to require support is consistent with the record. Thus, the ALJ's assessment of Dr. Palmieri's opinion is not fully supported by substantial evidence.

In summary, the ALJ's rationale for not finding the opinions of Dr. Archambault, Dr. Perez, Dr. O'Connor, and Dr. Palmieri persuasive are not supported by substantial evidence and the ALJ has erred.

**B.**      ***Subjective Symptom Testimony***

Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ discounted plaintiff's testimony, stating that despite plaintiff's "struggles with several issue due to his mental health impairments," he had "demonstrated diligence and hard work" and had used "available supports, tools, and strategies to accomplish his goals." (Tr. 19.) By way of example, the ALJ pointed out that plaintiff "maintains a fairly busy schedule with

school, work, and general activities of daily living." (Tr. 19.) The ALJ cited plaintiff's use of

tutoring services, fidget cubes, and a notepad for remembering multi-step tasks to demonstrate

his success in activities of daily living. (Tr. 20.) But the ALJ, in his decision, somehow failed to

recognize that all the strategies listed are in fact a form of accommodation that plaintiff receives

regularly to succeed. The ALJ instead concluded that "evidence indicates [plaintiff] could sustain

full-time work if it were in a less stressful environment and with less social interaction, as

reflected [in the RFC]." But the ALJ identifies no evidence supporting his conclusion that

plaintiff would require fewer accommodations than he receives at his current job, where he has

limited interactions, has a routine setting up the food station, is provided extra time to perform

that routine, and must still be allowed to take extra five-minute breaks as needed. Every report

from work and school notes that plaintiff requires extra time to complete tasks, requires extra

breaks, requires repetition of instruction, and repeated demonstrations of tasks. Thus, the ALJ's

rationale is not supported by substantial evidence. Accordingly, the ALJ did not provide clear and

convincing reasons to discount plaintiff's subjective symptom testimony.

**C.**    ***Lay Witness Testimony***

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ

must consider unless she "expressly determines to disregard such testimony and gives reasons

germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen*

*v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony

"*cannot* be disregarded without comment" (emphasis in original)) an ALJ may not reject such

testimony without comment and "must give reasons that are germane to each

witness." *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Page 13 – OPINION AND ORDER
*Isaiah L. v. SSA*, 6:23-cv-02801-AR

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Nguyen*, 100 F.3d at 1467). Such an error may be harmless, and a court must determine whether the error is " 'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

The Commissioner argues that under the new regulations regarding evaluation of medical evidence an ALJ is no longer required to provide any rationale for rejecting lay witness statements. (Def.'s Br. at 10-11, ECF 13.) Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). In the Commissioner's view, lay testimony is a "nonmedical source," and ALJ's are not required to articulate how that evidence was considered. *See Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992, at *1-2 (9th Cir. Jan. 23, 2024) (stating that under the new regulations, an ALJ is not required to articulate how [she] considered evidence from nonmedical sources), and *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence

under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."). The court is unpersuaded by the Commissioner's argument.

The Ninth Circuit has not yet decided whether the regulations relating to medical evidence affect an ALJ's analysis of lay witness testimony. *See Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024) (stating is it unclear "whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations"). Still, most of the district courts in this circuit have "concluded that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony." *Karen W. v. Comm'r Soc. Sec. Admin.*, No. 24-cv-00294-AR (D. Or. Feb. 28, 2025) (collecting cases).

In his decision, the ALJ discounted the testimony of plaintiff's mother, finding her written statements inconsistent with the record. The ALJ found her written testimony that plaintiff "rarely goes out alone, other than to work" was inconsistent with testimony that plaintiff goes to work "four days per week and goes to school five days per week." (Tr. 19.) Yet the record reveals that plaintiff was not in school at the time his mother provided her written statement; her statement to was provided in March 2022, and he began school in September 2022. Thus, the ALJ's reason for discounting the lay testimony on this basis is not supported by substantial evidence. (Tr. 67, 289.) The ALJ also took issue with plaintiff's mother's assertion that plaintiff "has a short attention span" finding this was contradicted by her statement that plaintiff "spends time watching movies and playing video games." (Tr. 19.) Here again, substantial evidence does not support the ALJ's conclusions. Notes from consultative examination state that plaintiff's "fixated interests include Legos, video games, and the movie [Wall-E]" and that his repetitive behaviors include "fidgeting with Legos, playing a handheld video game, lining up toys or items,

Page 15 – OPINION AND ORDER
*Isaiah L. v. SSA*, 6:23-cv-02801-AR

echolalia, and repeating the same songs." (Tr. 418-19.) Thus, the court concludes that the ALJ's failed to provide germane reasons, backed by substantial evidence, to reject the lay testimony of plaintiff's mother.

**D.    *Remedy***

When a court determines that the ALJ has committed harmful legal error in denying benefits, the court may affirm, modify, or reverse the decision "with or without remanding the cause for a rehearing." *Treichler*, 775 F.3d at 1099 (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or an immediate award of benefits, the court conducts a three step "credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Brown-Hunter*, 806 F.3d at 495; *Garrison*, 759 F.3d at 1020. Even if all three steps are satisfied, the court retains "flexibility" to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

All the credit-as-true criteria are satisfied here. The ALJ erred in evaluating the medical opinion evidence, plaintiff's symptom testimony, and the lay witness testimony. The record is fully developed and there are no outstanding issues to resolve. The record shows that plaintiff requires instructions to be repeated, requires extra time to comprehend and complete tasks, and requires five-minute breaks on an as-needed basis to keep from feeling overwhelmed. The vocational expert testified that a person who was off task more than 10 percent of the day or

required extra, unscheduled breaks during the day would not be able to sustain full-time

employment. (Tr. 82-83.) Furthermore, the court's review of the record creates no serious doubt

that plaintiff is, in fact, disabled. Accordingly, the court exercises its discretion to remand this

case for an immediate award of benefits.

**CONCLUSION**

For the above reasons, Commissioner's decision is REVERSED and REMANDED for

immediate calculation and payment of benefits.

DATED: October 14, 2025.

_____
JEFF ARMISTEAD
United States Magistrate Judge